William M. Senter et al., Respondents, *v.* Continental Bank, Appellant.

### October 28, 1879.

The holder or payee of a banker's check may maintain an action at law against the bank having funds of the drawer, where presentation has been duly made and payment demanded.

Appeal from St. Louis Circuit Court.

*Affirmed.*

Charles E. Pearce, for appellant: The payee or holder of a check cannot maintain a suit at law against a bank on which it is drawn, though presentation. has been made and payment demanded. —*Carr* v. *Bank,* 107 Mass. 47 ; *Republic* v. *Millard,* 10 Wall. 155 ; *Case* v. *Anderson,* 23 La. An. 49 ; *Chapman* v. *White,* 2 Seld. 412 ; *Loyd* v. *McCaffrey,* 46 Pa. St. 410, 414 ; *Bullard* v. *Randall,* 1 Gray, 605 ; *Dane* v. *Bank,* 13 Allen, 445 ; *Ballou* v. *Boland,* 14 Hun, 355 ; *Dykers* v. *Leather Man. Co.* 11 Paige, 616 ; *Bank* v. *Bank,* 5 Am. L. Reg. 711.

Silas B. Jones, for respondents, cited : *McGrade* v. *German Savings Inst.,* 4 Mo. App. 330 ; *Zelle* v. *German Savings Inst.,* 4 Mo. App. 401.

Hayden, J., delivered the opinion of the court.

The appellant rests his case upon a single proposition, contending that the payee or holder of a banker's check cannot maintain a suit at law against the bank having funds of the drawer, though presentation has been duly made and payment of the check demanded. This is a vexed question, and the decision of most respectable courts may be adduced on either side. Most of these decisions were carefully considered by this court in *McGrade* v. *German Savings Institution,* 4 Mo. App. 330, and *Zelle* v. *German Savings Institution,* 4 Mo. App. 401, and the contrary of the above proposition was reached as a correct conclusion. Though the

decision of the Supreme Judicial Court of Massachusetts in *Carr* v. *Bank*, 107 Mass. 49, has since reached us, we have seen nothing which leads us to alter our opinion, or to adopt a doctrine which, though asserted by most respectable authorities, appears to us to quietly ignore the peculiarities of bankers' checks and the special features of the contract as understood between banker and customer, and as established by the usage of the business world. It surely cannot be said to accord with those principles on which the commercial laws of this country ought to be administered, that an assumed want of privity — which in many parallel cases the law supplies, that the intention of contracting parties may be carried out — should be strenuously insisted on in order that the intention of the parties to a commercial contract may be defeated. It would be less ambiguous to admit the intention of the parties and the effect of their contract, according to the universal understanding of men of business and to their course of dealing, than to say that to this contract, though neither illegal nor contrary to the policy of the law, the law will not give its sanction by permitting the holder to maintain an action against the bank. It would not then appear, as it appears now from arguments used in some of the cases, as if it were impossible or illegal that the bank should beforehand agree with its customers that it would, if in funds, and in the absence of revocation, pay checks to such payees as might present them at the bank. But if an express agreement to this effect is permissible, why may not an implied one, or an agreement of which one of the terms is implied, raise a promise in favor of a payee, by analogy to that class of cases where the mere payee or recipient is some one unknown or unheeded, a person merely indicated by one of the contracting parties, and with whom the obligor has in the first instance nothing to do? Surely there is no objection in principle to the recognition of such a contract, or to the payee's right to sue because the bank does not in the first instance see him or know his

name.   The obligation of the bank is to pay, upon present-
ment, to such person as shall be named, or to bearer; and
if the law required specific designation and express privity
between bank and payee, why should not *modus et conventio*
supersede the requirement?   The contract now insisted on
has for its basis the common understanding of banker, cus-
tomer, and holder; and this understanding rests upon a
course of dealing as well established, perhaps, as any in
the business community.

We are referred to what is said by Mr. Morse in the
recent edition of his work on Banking (2d ed., p. 25), to
the effect that the denial of the holder's right to sue will
probably hereafter become the doctrine generally accepted
in this country.   We are directly of the opposite opinion.
The weight of reasoning, we think, is clearly in favor of the
holder's right.   The contrary doctrine is equivalent to a
confession that the law is incompetent to extend well-estab-
lished principles to new cases as the latter arise from new
contracts created by commercial necessities.

All the judges concurring, the judgment is affirmed.