UNION BISCUIT COMPANY, Appellant, v. SPRING-
FIELD GROCER COMPANY, Respondent.

**Springfield Court of Appeals, April 4, 1910.**

1. **DEBTOR AND CREDITOR: Payment of Debt: Draft Stolen by Creditor's Employee.** The debtor sent a bank draft endorsed to his creditor in payment of his debt. The letter containing the draft was opened and the draft taken without authority by a bookkeeper of the creditor, and the creditor's name erased on the endorsement, the bookkeeper's name written therein, the draft cashed and the money appropriated by the bookkeeper; *held*, that the debt was not paid, that under the evidence the creditor was guilty of neither negligence nor laches, and that the debtor's money is still in the hands of the bank which issued the draft, having never been paid to the real endorsee.

2. ————: **What Constitutes Payment.** The word "payment" in its legal sense has a well defined meaning. In order to constitute payment as that word is used in law there must be (1) a delivery, (2) by the debtor or his representative, (3) to the creditor or his representative, (4) of the money or something accepted by the debtor as the equivalent thereof, (5) with the intention on the part of the debtor to pay the debt in whole or in part and (6) accepted as payment by the creditor.

3. ————: **Debt: Payment by Draft or Bill.** The common law rule which has been adopted in Missouri is that the taking of a check, bill of exchange or note for a debt is not payment of the debt unless the creditor expressly agrees to take it as such. It is not payment until the money is received on it.

4. **PLEADING: Action on Account: Plea of Payment: Burden of Proof.** In an action on account where the answer pleads payment, the burden is upon defendant to prove payment.

5. ————: **Estoppel.** An estoppel *in pais*, whether the estoppel arises from neglect, laches or otherwise, must be pleaded in order to be available as a defense.

6. **BANKS AND BANKING: Payment of Draft: Forged Indorsement.** The payment of a draft upon a forged indorsement to a person unauthorized to receive it is not in law a payment, because the drawee of a draft is bound to know that the indorsement is genuine, and if paid on a forged indorsement was paid at the peril of the drawee.

Biscuit Co. v. Grocer Co.

7. ———: ———: Privity Between Endorsee and Drawee. The endorsee of a draft cannot recover the amount of the draft from the drawee, for there is no privity of contract between the endorsee and the drawee.

Appeal from Greene Circuit Court.—*Hon. James T. Neville*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. T. White* for appellant.

(1) Estoppel *in pais* whether the estoppel arises from negligence, laches or otherwise must be pleaded in order to be available as a defense. 16 Cyc. of Law and Proc., 772; Bank v. Doran, 109 Mo. 40; Golden v. Tyler, 180 Mo. 196; Cockrill v. Hutchinson, 135 Mo. 67; Bray v. Marshall, 75 Mo. 327; Noble v. Blunt, 77 Mo. 235; Vanderline v. Smith, 18 Mo. App. 55; Inv. Co. v. Bank, 96 Mo. App. 125. (2) The undisputed evidence shows conclusively that the plaintiff was not negligent nor guilty of laches or of any conduct whatever which would constitute an estoppel *in pais*. Bank v. Ins. Co., 110 Mo. App. 62; Lieber v. Bank, 137 Mo. App. 158; Wind v. Stephens, 39 Mo. App. 72; Belknap v. Bank, 100 Mass, 376, 97 Am. Dec. 105; Vanbibber v. Bank, 14 La. Ann. 481, 74 Am. Dec. 442; Shipman v. Bank, 126 N. Y. 318, 12 L. R. A. 791; Rice v. Bank (Ky.), 51 S. W. 454; Trust Co. v. Ragan, 52 S. W. 848; Laborde v. Consolidated Ass'n, 39 Am. Dec. 514; 2 Daniel on Negotiable Inst. (4 Ed.), sec. 1370. (3) There is no evidence that plaintiff ever received the draft. Even if it did, the law is well settled that the taking of a check, bill of exchange or note for a debt is not payment of the debt unless the creditor expressly agrees to take it as such. It is not payment until the money is received on it. Selby v. McCullough, 26 Mo. App. 66; State ex rel. v. Wagers, 47 Mo. App. 431; Bank v. Bank, 58 Mo. App. 17; Barton Bros. v. Wallenstein, 59 Mo.

App. 618; Joseph-Brinkman Co. v. Bank, 116 Mo. 558; Smith v. Bank, 120 Mo. 527; Vanbibber v. Bank, 14 La. Ann. 481, 74 Am. Dec. 442; Foltier v. Schroder, 19 La. Ann. 17, 92 Am. Dec. 521; 2 Daniel on Negotiable Inst. (4 Ed.), sec. 1623. (4) Since the delivery of the draft or check could not be payment, there could be no payment until the cash was received upon it by the plaintiff. The payment of the draft upon a forged endorsement to a person unauthorized to receive it could not be payment. Grocer Co. v. Bank, 71 Mo. App. 132; Bank v. Insurance Co., 110 Mo. App. 62; Bank v. Bank, 107 Mo. 402; Bank v. Bank, 109 Mo. App. 665; Kenneth v. Bank, 96 Mo. App. 125; Lieber v. Bank, 137 Mo. App. 158; Stout v. Benoist, 39 Mo. 277; M'cKeen v. Bank, 74 Mo. App. 281; Bank v. Whitman, 94 U. S. 347. (5) Plaintiff could not sue the drawee of the draft because there was no privity between them. The indorsement, on the forged instrument, would not create a privity which would render the drawee liable to the indorsee. Gro. Co. v. Bank, 71 Mo. 132; Bank v. Insurance Co., 110 Mo. App. 621; Bank v. Bank, 109 Mo. App. 671; 5 Cyc. Law (2 Ed.), 1076.

*Sebree, Farrington, Pepperdine & Wear* for respondent.

STATEMENT.—This was an action on an open account in which the petition alleged a balance due of $212.46 from the defendant to the plaintiff for goods sold to the defendant by the plaintiff. The petition shows that the sales of goods extended from August to December, 1904. The real controversy is over $86.48 of the above mentioned amount, the balance of the same having been paid, as plaintiff admits.

The defendant filed an amended answer in which it stated "that said defendant paid to the plaintiff the sum of $212.46 in full payment and satisfaction of the account in plaintiff's petition mentioned and described.

A trial was had before the court, a jury being waived, and judgment was rendered in favor of the defendant, from which the plaintiff has appealed.

After hearing the evidence, the trial court made the following special finding of facts:

## "Finding of Facts.

"The court finds the facts to be that there is no dispute about the items of the account in this cause. The only question is as to the payment of the $86.48. The court finds that the defendant purchased a draft, payable to its own order, at the National Exchange Bank in Springfield, Missouri, on a solvent bank in some other city; that the treasurer of the defendant company duly indorsed the said draft in regular form, payable to the plaintiff and that in regular course, with the remittance letter, sealed up said draft in an envelope, properly stamped and posted the same, directed to plaintiff; that in due course of mails, the letter was delivered to plaintiff's place of business and into its custody; that one Harry E. Bixby, at that time in the employ of the plaintiff, and who had access to its mail and papers and to this particular letter, wrongfully opened said letter and abstracted said draft therefrom, erasing the name of the plaintiff in the indorsement and inserting that of his own, and cashed said draft as and for his own. I find that said Harry E. Bixby was a bookkeeper in the employ of the plaintiff at the time and that as such he had access to its remittances and to its mail. I find that the draft was paid and in due course has been paid by the bank on which it was drawn, and said draft as so cancelled and paid has been returned to the possession of the National Exchange Bank and that the defendant has never been reimbursed for the amount thereof."

The court gave the following declarations of law:

"3. The evidence in this case does not show that plaintiff was negligent in having in its employ the bookkeeper Bixby who committed the forgery of the indorsement on the draft which defendant claims was delivered in payment of plaintiff's claim. The defendant in the usual manner of doing business, placed in plaintiff's hand a valid draft for the amount sued for, and the plaintiff lost same without any fault of defendant or of the drawer of said draft, the drawee being willing and able to pay, and that is payment by the defendant unless refusal to accept because of not being cash is shown.

"4. The mailing of the draft mentioned in evidence to plaintiff and the receipt of same by plaintiff does not constitute payment of the claim sued on in the absence of an agreement to that effect or conduct on the part of plaintiff which showed an intention to so treat it. But such facts entitled defendant to a credit of the amount of the draft when, as in this case, the same was kept by them and converted by a bookkeeper in their employ."

The plaintiff introduced no evidence. The evidence introduced by the defendant showed that the defendant on October 1, 1904, purchased a draft or check of the National Exchange Bank at Springfield, Missouri, for $86.48, which is as follows:

"The Nat'l Exchange Bank,

Springfield, Mo., Oct. 1st, 1904.

No. 104515.

Pay to the Order of Springfield Grocer Co. . . . . . . . . . . .
$86.48 Eighty-six 48-100 . . . . . . . . . . . . . . . . . . . Dollars
J. B. RUSSELL, Ass't. Cashier.
To the National Bank of Commerce, St. Louis, Mo.
Not over one hundred dollars. $100.00."

Indorsed on back as follows:

"Pay to the order of H. E. Bixby, Springfield Grocer Co.,

S. E. COPE, Treas.

H. E. BIXBY.

ALBERT ANHOLD.

THEO. HAEFNER.

Pay German Sav. Inst. or Order,

A. LAUX & SON PACKING CO.,

A. LAUX.

German Sav. Inst. guarantee all indorsements.
Oct. 8, 1904."

The draft was payable to defendant's own order and was duly indorsed by the treasurer of the defendant to the plaintiff, Union Biscuit Company. In regular course, with remittance letter, the draft was sealed in an envelope, stamped and duly posted to the plaintiff. One H. E. Bixby was at that time in the employ of the plaintiff as a bookkeeper and by some means obtained possession of this draft. He erased the name "Union Biscuit Company" in the indorsement, inserted his own in its place and cashed the draft as and for his own. The draft was paid in due course by the bank on which it was drawn, and as so cancelled and paid, was returned to the possession of the National Exchange Bank of Springfield where it was originally purchased, and the defendant has never been reimbursed for the amount thereof. The officers of the plaintiff, whose testimony was offered by the defendant, testified that they never saw the draft and that the account had never been paid.

NIXON, P. J.—In this case, the defendant having pleaded payment of plaintiff's account, under the rules of pleading, the burden was upon defendant to prove payment. [Yarnell v. Anderson, 14 Mo. 432; Griffith v. Creighton, 61 Mo. App. 1.]

143 App—20

The word "payment," in its legal sense, has a well-defined meaning. In order to constitute payment, as that word is used in law, there must be (1) a delivery, (2) by the debtor or his representative, (3) to the creditor or his representative, (4) of money or something accepted by the creditor as the equivalent thereof, (5) with the intention on the part of the debtor to pay the debt in whole or in part, and (6) accepted as payment by the creditor. [30. Cyc. 1181.]

The rule is well established that in the absence of an agreement between the parties that it is to be received as payment, the common-law rule which prevails in England and has been adopted without question in nearly all of the States in this country is that a draft or bill of exchange, acceptance, order or promissory note of the debtor is not a payment or an extinguishment of the original demand. And the same rule applies to the bill, note, order, or acceptance of a third person given by the debtor to the creditor. [30 Cyc. 1194.] And Missouri is one of the States that has accepted the common-law rule that the taking of a check, bill of exchange or note for a debt is not payment of the debt unless the creditor expressly agrees to take it as such; it is not payment until the money is received on it. [Selby v. McCullough, 26 Mo. App. 72, and cases cited; Johnson-Brinkman Co. v. Central Bank, 116 Mo. 570, 22 S. W. 813; Smith v. Bank, 120 Mo. App. 550, 97 S. W. 247; Barton v. Hunter, 59 Mo. App. 618; Carroll Exchange Bank v. First National Bank, 58 Mo. App. 17.]

The trial of this case by the court proceeded upon the theory that the acts of the plaintiff and its agents constituted an estoppel in pais. There was no defense pleaded except payment. An estoppel in pais, whether the estoppel arises from neglect, laches or otherwise, must be pleaded in order to be available as a defense. [Bray v. Marshall, 75 Mo. 327; Cockrill v. Hutchinson,

135 Mo. 67, 36 S. W. 375; Golden v. Tyer, 180 Mo. 196, 79 S. W. 143; 16 Cyc. 772.]

But even if such estoppel had been pleaded in this case, the facts conclusively establish that the plaintiff was not estopped to deny the receipt of the draft or its proceeds. The undisputed evidence shows that the plaintiff was neither negligent nor guilty of laches or other conduct which would constitute an estoppel *in pais*. [Henderson Trust Co. v. Ragan (Ky.), 52 S. W. 848; Shipman v. Bank, 126 N. Y. 318, 12 L. R. A. 791; Lieber v. Bank, 137 Mo. App. 158, 117 S. W. 672; Kenneth Inv. Co. v. Bank, 96 Mo. App. 125, 70 S. W. 173; Wind v. Bank, 39 Mo. App. 72.]

In this case, the evidence introduced by the defendant showed that the plaintiff had never cashed or indorsed the draft. The payment of a draft upon a forged indorsement to a person unauthorized to receive it is not in law a payment, because the drawee of the draft was bound to know that the indorsement was genuine, and if paid on a forged indorsement, was paid at the peril of the drawee. To all intents and purposes, in law, the money of the defendant is still in the hands of the National Exchange Bank. The draft, never having been paid to the real indorsee, the plaintiff, but to a stranger whose name was forged as indorsee, in law, the money represented by the draft is still in the hands of the National Exchange Bank and still the property of the defendant and subject to be appropriated by it. There was no privity of contract between *plaintiff* and the drawee of the draft and *plaintiff* could not collect the fund which it represented. The bank is not only bound to know the signatures of its depositors so as to render it liable for a payment on a customer's forged draft, but is equally bound to know that the indorsement of one who is a stranger to it is genuine. It is liable for the payment to the wrong party of an altered check or draft. [Houston Gro. Co. v. Bank, 71 Mo. App. 132; Merchants' Bank v. Ins. Co., 110 Mo. App. 66, 84 S.

W. 101; Bank v. Bank, 109 Mo. App. 671, 83 S. W. 537; Belknap v. Bank, 100 Mass. 376; First National Bank v. Whitman, 94 U. S. 34; Hatten v. Holmes (Cal.), 31 Pac. 1131; 5 Cyc. 1076.]

A typical case is that of Houston Gro. Co. v. Bank, supra, where a retail dealer in paying for goods to a wholesale dealer gave his check to the traveling salesman of the wholesale dealer. This salesman indorsed the name of the payee without authority on the check, drew the money out of the bank and deposited the sum to his own account. The wholesale dealer whose salesman and agent had forged its indorsement then sued the bank for the amount of the forged checks. The court held that plaintiff could not recover because there was no privity between the payee of the checks and the drawee; that the pretended payment would not diminish the funds of the drawer in the bank or put any money in the pocket of the person entitled to payment; that the state of the account was the same after the pretended payment as it was before.

The present case was tried by the court upon an erroneous view of the law. The court declared, in substance, that if the draft was mailed to the plaintiff and was stolen or converted by the plaintiff's bookkeeper, the defendant was entitled to a credit for the amount. Such a view is not warranted by any authority that has been presented to us. Such a construction of the law would make the mere mailing of a draft a payment, regardless of whether the payee received it or accepted it as payment or received the proceeds of it and would constitute a payment if such draft was stolen by the payee's bookkeeper, regardless of any act on the part of the payee or any authority or apparent authority of the bookkeeper to indorse or collect the draft. Such a view of the law cannot be approved.

Under the authorities cited, it is clear that the judgment was for the wrong party. The plaintiff's demurrer to the evidence should have been sustained.

The judgment is accordingly reversed and the cause remanded with directions to the circuit court to enter judgment for the plaintiff for the sum of $86.48, with interest at the rate of six per cent. per annum from the 26th day of December, 1906, together with costs. All concur.